**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 17-cv-02663-CMA

AKEEM ABDULLAH MAKEEN,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING THE DENIAL OF BENEFITS

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Akeem Abdullah Makeen's application for disability insurance benefits. Jurisdiction is proper pursuant to 42 U.S.C. § 405(g).

Mr. Makeen argues that the administrative law judge's ("ALJ") determination that he is capable of performing work that exists in significant numbers is erroneous. (Doc. # 12.) Because the ALJ's analysis was supported by substantial evidence and because the ALJ used the correct legal standards, the Court rejects Mr. Makeen's arguments and affirms the decision of the Commissioner.

## I.     BACKGROUND

Mr. Makeen filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, on June 16, 2014. (Doc. # 9-5 at 155–

56.)[1]  He alleged that the onset of his disability was April 30, 2013, and that his ability to work was limited by "hypertensive cardiovascular disease/hypertension; seizures/epilepsy; [and] brittle diabetes impairment."  (Doc. # 9-6 at 182, 190.)  Mr. Makeen explained that he stopped working as a network engineer in April 2013 "[b]ecause of [his] conditions" and because his contract ended.  (*Id.* at 190.)

Mr. Makeen's application for disability insurance benefits was initially denied on January 13, 2015, by an administrator at the regional Social Security office in Aurora, Colorado.  (Doc. # 9-4 at 100–02.)  The administrator explained that the evidence showed that Mr. Makeen's diabetes was "well-controlled with medications," his hypertension was "stable on [his] medications," and his seizures were "improved with medication."  (*Id.* at 100.)  Mr. Makeen, represented by non-attorney Carrie Tremblatt, *see* (*id.* at 148–50), filed a written request for a hearing before an ALJ on February 6, 2015.  (*Id.* at 103.)

ALJ Rebecca LaRiccia conducted a hearing on September 19, 2016, in Denver, Colorado.  (Doc. # 9-2 at 47–82.)  Mr. Makeen, his representative, and an impartial vocational expert, Jammie Massey, were present.  (*Id.* at 47.)  Mr. Makeen testified that he ceased working in 2013 because his "seizures started coming back severely" "three to four" times a day and that his seizures presented in three forms: grand mal seizures, petit mal seizures, and "generalized" seizures.  (*Id.* at 58–59.)  He stated that on an average

---

[1] All of the exhibits filed Doc. # 9 constitute the Administrative Record in this matter.  The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 9-5) and the page number from the Administrative Record (*e.g.*, at 155–56).

day, he made breakfast, did some work for "the board," napped, watched television, and watched his wife make dinner. (*Id.* at 69.) When prompted by his representative, Mr. Makeen explained that computer screens and stress aggravated his seizures. (*Id.* at 71–72.) At the end of the hearing, the ALJ asked the impartial vocational expert about a hypothetical individual of Mr. Makeen's age, education, and work experience who was capable of performing work "at the medium range exertion," subject to some physical limitations, and capable of "understanding[ing], remember[ing], and carry[ing] out simple, routine, repetitive tasks that can be learned in 30 days or less with occasional interaction with coworkers, supervisors, and the general public." (*Id.* at 76.) The vocational expert answered that this hypothetical individual would not be able to perform Mr. Makeen's past work as a network systems analyst but could perform work as a sandwich maker, a kitchen helper, or a laundry worker. (*Id.* at 76–77.) The vocational expert also explained that, if the hypothetical individual was to be absent three times a month, the "level of absenteeism would not be tolerated in any job," and that, if the hypothetical individual was off task two hours out of the eight-hour workday, such a restriction "would not allow for work." (*Id.* at 78.)

The ALJ concluded that Mr. Makeen was not disabled, as defined in the Social Security Act, and therefore not entitled to disability insurance benefits in her decision on December 27, 2016. (Doc. # 9-2 at 23–46.) She determined that Plaintiff had several severe impairments—"discogenic and degenerative disc disease (DDD), status post partial laminectomy and cyst removal; atherosclerosis; kidney disease; a seizure disorder; hypertension; a major depressive disorder (MDD); and a personality

disorder"—but that these severe impairments, considered singly and cumulatively, did not meet or medically equal the severity of one of the listed impairments in the Social Security Administration's Listing of Impairments, 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016).[2] (Doc. # 9-2 at 28–29.) With regard to Mr. Makeen's epilepsy, the ALJ stated that evidence failed to document the required occurrence of seizures despite compliance with medication to satisfy the listing at 11.02.[3] (*Id.* at 30.) As to Mr. Makeen's depressive and personality disorders, the ALJ explained that the evidence did not satisfy the paragraph B criteria[4] of the listings for affective disorders at 12.04 or for personality disorders at 12.08 because Mr. Makeen had "no more than a mild limitation" in activities of daily living, had "no more than a moderate limitation" in social functioning,

---

[2] The listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system them affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). Because the ALJ issued her decision on December 27, 2016, the Court cites to the listings in effect from September 29, 2016, to January 16, 2017.

[3] The listing for epilepsy at 11.02 requires "at least one detailed description of [the claimant's] seizures from someone, preferably a medical professional, who has observed at least one" of the claimant's seizures and, relevant here, evidence that the claimant experiences generalized tonic-clonic seizures "at least once a month for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt.-A2 (11.02A) (2016).

[4] Mental disorders are listed at section 12.00 of the appendix. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). Each listed mental disorders is defined by two or three paragraphs, designated A, B, and C. *Id.* For a listed mental disorder that is defined by only two paragraphs, the claimant's "mental disorder must satisfy the requirements of both paragraphs A and B." *Id.* For a listed mental disorder that is defined by three paragraphs, the claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* Paragraph A of each listing is the medical indicators that must be present in the claimant's medical evidence. *Id.* Paragraph B provides the functional criteria the Social Security Administration assesses, in conjunction with a rating scale, to evaluate how the claimant's mental disorder limits his or her functioning. *Id.* Paragraph C, where included, provides the criteria the Administration uses to evaluate "serious and persistent mental disorders." *Id.*

had "no more than moderate limitations" in concentration, persistence, and pace, and had no episodes of decompensation. (*Id.* at 30–32.)

The ALJ next concluded that Mr. Makeen had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567[5] except maximum lifting of forty (40) pounds, frequently lifting twenty-five (25) pounds, but unlimited sit, stand, and walk. Avoid unprotected heights, ladders, ropes, scaffolds, and hazardous machinery. Can understand, remember, and carry out simple routine, repetitive tasks that can be learned in 30 days or less with occasional interaction with coworkers, supervisors, and the public.

(*Id.* at 32.) Finally, based on the vocational expert's testimony, the ALJ decided that Mr. Makeen was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as work as a sandwich maker, a kitchen helper, or a laundry worker. (*Id.* at 40–41.)

Mr. Makeen requested that the Appeals Council review the ALJ's decision on January 5, 2017. (Doc. # 9-4 at 153.) The Appeals Council denied Mr. Makeen's request for review on September 8, 2017, briefly stating that it "found no reason under [its] rules to review the [ALJ's] decision." (Doc. # 9-2 at 1–7.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981; *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

---

[5] With regard to physical exertion, "medium work" is defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Heavy work" "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* "Light work" is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

Mr. Makeen initiated the instant action on November 7, 2017, seeking reversal of

the ALJ's decision and the award of disability insurance benefits to him. (Doc. # 1.)

After the Commissioner filed the Administrative Record, *see* (Doc. ## 9–9-18), Plaintiff

filed his Opening Brief on February 16, 2018 (Doc. # 12). The Commissioner filed a

Response on March 7, 2018 (Doc. # 13), to which Plaintiff replied on March 21, 2018

(Doc. # 14.)

## II.   <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining

"whether the findings are supported by substantial evidence and whether the Secretary

applied the correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.

1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

First, the Supreme Court has defined "substantial evidence" as "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Consol.*

*Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "Substantial evidence is more

than a scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d

1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court

"may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass*

*v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not

displace the agency's choice between two fairly conflicting views, even though the

[C]ourt would justifiably have made a different choice had the matter been before it de

novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "A finding of '"no substantial evidence" will be only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.  LAW

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).  The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work.  *See* 20 C.F.R. §§ 404.1512(g), 404.1560(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007).  A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

### IV.  ANALYSIS

Mr. Makeen argues that the ALJ erred in three ways: (1) "[t]he ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Mr.

Makeen's physical residual functional capacity;" (2) "[t]he ALJ failed to properly evaluate Mr. Makeen's testimony;" and (3) "[t]he ALJ relied on a flawed hypothetical question to the vocational expert." (Doc. # 12 at 12–20.) The Court rejects each argument in turn.

## A.    THE ALJ'S WEIGHING OF TREATING SOURCES' MEDICAL OPINIONS

Mr. Makeen's application contained medical opinions of two treating sources. First, Mr. Makeen's treating neurologist, Dr. Archana Shrestha, M.D., completed a "seizure questionnaire" for Mr. Makeen's non-attorney representative on October 15, 2014. (Doc. # 9-8 at 359–64; Doc. # 9-16 at 1001–06.)[6] Dr. Shrestha reported treating Mr. Makeen once or twice a year since approximately 2000 and diagnosed him with "spells of unclear etiology" and "left frontal vascular malformation." (Doc. # 9-16 at 1001.) She identified as supporting laboratory and diagnostic test results (1) a "[b]rain MRI show[ing] the vascular malformation, stable," and (2) an "EEG mildly abornmal with left hemisphere slowing[,] likely related to # 1." (*Id*.) Dr. Shrestha speculated that Mr. Makeen "may have focal onset seizures but this is unknown," and he "may also have non-epileptic spells/events." (*Id*.) When asked the average frequency of Mr. Makeen's seizures and spells, she wrote, "Multiple spells a day of certain types of spell to once a week of another type of spell," but when asked for the date of his last three seizures or spells, she wrote, "Unknown. He did not have any spells/events in the hospital from [September 2, 2014, to September 5, 2014.]" (*Id*. at 1002.) Dr. Shrestha declined to answer multiple questions about Mr. Makeen's functional abilities and the causes of his

---

[6] Dr. Shrestha's completed seizure questionnaire is produced twice in the Administrative Record. However, the questionnaire in Doc. # 9-8 is missing its third page. The Court will henceforth cite only to the questionnaire in Doc. # 9-16. *See* (Doc. # 9-8 at 359–64; Doc. # 9-16 at 1001–06.)

seizures, writing just "Unclear," "Unknown," "Possible," and "?".  (*Id.* at 1004.)  For example, when asked the degree to which Mr. Makeen could tolerate work stress and whether he was a malingerer, she answered "unknown" to both questions.  (*Id.*)  In the 'additional comments' section, Dr. Shrestha wrote: "At this time it is unclear what he has, whether these spells are epileptic or not.  When I saw him on [October 31, 2013], he was doing really well, but when I saw him next on [July 17, 2014], he was having multiple types of events daily to weekly."  (*Id.* at 1005.)

The ALJ gave Dr. Shrestha's opinion "limited weight," characterizing Dr. Shrestha as "uncertain if [Mr. Makeen] was in fact suffering from seizures."  (Doc. # 9-2 at 37–38.)  The ALJ noted that Dr. Shrestha treated Mr. Makeen only once or twice a year, that she observed him "doing well" until 2014, and that she reported an MRI showed the vascular malformation was "stable" and an EEG showed that the left hemisphere of Mr. Makeen's brain was just "mildly abnormal."  (*Id.*)  The ALJ explained that, because Dr. Shrestha's was tentative about the cause and the symptoms of Mr. Makeen's reported increase in seizures in 2014, and because the rest of his "file contain[ed] no supportive medical visits . . . to support an increase in symptoms to such a degree," she afforded Dr. Shrestha's opinion limited weight.  (*Id.*)

Second, Mr. Makeen's treating primary care physician, Dr. Michelle Thomas, M.D., wrote a letter and filled out "diabetes impairment questionnaire" for Mr. Makeen's representative on October 10, 2014.  (Doc. # 9-8 at 352–57.)  In the letter, Dr. Thomas opined that Mr. Makeen's diabetes, diagnosed in September 2013, "improved markedly on oral medications only," did not give rise to complications, and was under "good

control." (*Id.* at 357.)  She assessed his prognosis as to diabetes are "excellent."  (*Id.*)

Dr. Thomas also stated that Mr. Makeen had a history of "seizure disorder" and "well-controlled hypertension."  (*Id.*)  Dr. Thomas reported that Mr. Makeen had been unable to work since April 30, 2013, "because of difficulties with his vision at the computer" and because he "needs to take naps 3 times a day because of dizziness and visual changes."  (*Id.*)  She opined that Mr. Makeen had limitations regarding dizziness, "blurred vision at the computer and the need to take frequent naps during the day," but that "[t]he cause of these problems [was] unknown at the present time."  (*Id.*)  Dr. Thomas concluded that Mr. Makeen was not then disabled from diabetes.  (*Id.*)

Dr. Thomas's answers on the diabetes impairment questionnaire were similar to her explanation in the letter.  *See* (*id.* at 353–55.)  When prompted to list Mr. Makeen's symptoms, she wrote that Mr. Makeen "has difficulties seeing the computer [and] needs frequent naps due to visual changes."  (*Id.* at 353.)  She indicated that Mr. Makeen's epilepsy was being followed by neurologists at the University of Colorado, including Dr. Shrestha.  (*Id.* at 355.)  Dr. Thomas opined that Mr. Makeen could perform a job in a seated position for one hour and while standing/walking for another hour each day and that his symptoms were severe enough to interfere with his attention and concentration "frequently."  (*Id.* at 354–55.)  However, she stated that it was "unknown" how often Mr. Makeen would be absent from work as a result of his impairment.  (*Id.* at 355.)

The ALJ gave the Dr. Thomas's opinion "minimal weight."  (Doc. # 9-2 at 37.) She explained that Dr. Thomas's opinions "regarding [Mr. Makeen's] vision change, sit,

stand, and walk limitations, and three (3) required naps [were] not supported in medical

evidence of record, and [were] based on claimant reports." (*Id.*)

1. Legal Principles

20 C.F.R. § 404.1527(c) (2016),[7] regarding claims filed before March 27, 2017,

codifies the Commissioner's assessment of medical opinions received into evidence.[8]

*See also* SSR 96-2p (2016). 20 C.F.R. § 404.1527(c)(2) states a presumption that the

Commissioner will give more weight to the medical opinion of a treating source. And

where the medical opinion of a treating source is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in the record, the regulation dictates that the Commissioner

will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2).

Where an ALJ does not assign a treating source's opinion controlling weight, 20

C.F.R. § 404.1527(c) requires that the ALJ apply the factors listed in its paragraphs

(c)(2) through (c)(6) to determine the weight to give the treating source's medical

opinion and all other medical opinions. The ALJ must both identify the weight accorded

to the opinion and "give good reasons" for the weight assigned to a treating source's

opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *Langley v.*

*Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ's explanation must be

sufficiently specific to make clear to any subsequent reviewers both the weight given to

---

[7] 20 C.F.R. § 404.1527 was updated in 2017, effective March 27, 2017. Because the ALJ
rendered her decision in 2016, the Court uses the prior version of the regulation, which was in
place between 2012 and 2017. All citations to the regulation in this Order are to the 2016
version of 20 C.F.R. § 404.1527.
[8] 20 C.F.R. §§ 404.1527(c) and 416.927(c) are identical substantively, and apply to respective
medical opinion assessments in disability and supplemental disability income determinations.

the medical opinion and the reasons therefor.  *Watkins*, 350 F.3d at 1300.  Finally, if the ALJ rejects the treating source's opinion completely, he or she "must give 'specific, legitimate reasons' for doing so."  *Id*. at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

    2.   <u>Application</u>

Mr. Makeen argues that Dr. Shrestha's and Dr. Thomas's opinions about his "physical limitations should have been given controlling weight" pursuant to 20 C.F.R. § 404.1527(c)(2).  (Doc. # 12 at 14.)  He describes their opinions as being "based on appropriate medical findings," citing Dr. Shrestha's MRI and EEG assessments and Dr. Thomas's "diagnostic testing of blood sugar levels."  (*Id*. at 13–14.)  Mr. Makeen also asserts that Dr. Shrestha's and Dr. Thomas's opinions were "uncontradicted by any other evidence credited by the ALJ, let alone substantial evidence."  (*Id*. at 14.)

Alternatively, Mr. Makeen asserts that "assuming *arguendo*" Dr. Shrestha's and Dr. Thomas's opinions did not merit controlling weight, the ALJ still erred by not properly assigning them "the greatest weight" in accordance with the factors at 20 C.F.R. § 404.1527(c)(1)–(6).  (Doc. # 12 at 14–15.)  Their opinions were well-supported, according the Mr. Makeen, and their findings were "consistent with the treatment notes . . . , testing, . . . [and] the opinions from the government's own consultative examiner." (*Id*.)

a.     *Dr. Shrestha's opinion*

The ALJ's assignment of "limited weight" to Dr. Shrestha's opinion was based on substantial evidence, and the ALJ adequately explained why such a weighting was appropriate.  *See* (Doc. # 9-2 at 37–38.)

First, the ALJ's decision that Dr. Shrestha's opinion was inconsistent with other evidence in the record—and thus not entitled to controlling weight—was supported by substantial evidence.  Dr. Shrestha opined, for example, that it was "possible" Mr. Makeen would need to break from work to rest at unpredictable intervals on a "? Daily to weekly" basis for "? 1-20 minutes."  (*Id.* at 1004.)  Even putting aside Dr. Shrestha's explicit uncertainty about her answers to the questions (*e.g.,* "Possible," "?"), that Mr. Makeen would need breaks from work so frequently was inconsistent with other treatment records, *e.g.*, (Doc. # 9-13 at 771) (Mr. Makeen reporting on April 4, 2013, that he's "had no seizures"); (Doc. # 9-9 at 464) (Dr. Shrestha recording that Mr. Makeen was "doing well and remain[ed] seizure free" for at least fourteen months), and with the results of his four-day observation in the hospital in September 2014, during which Mr. Makeen had no episodes, *see* (Doc. # 9-16 at 1031).  The Court is satisfied that this amounts to substantial evidence that Dr. Shrestha's opinion was inconsistent with other evidence in the record and therefore not entitled to controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2).

Second, the ALJ sufficiently explained why she assigned "limited weight" to Dr. Shrestha's opinion, and her decision reflects her consideration of the factors at 20 C.F.R. § 404.1527(c).  The ALJ wrote that she traditionally gave "great deference and

14

weight to the opinion" of a treating source and specifically cited to SSR 96-2p. (Doc. # 9-2 at 37); *see* 20 C.F.R. § 404.1527(c)(2). She stated that Dr. Shrestha was Mr. Makeen's "long-term" physician but that Dr. Shrestha only saw Mr. Makeen once or twice a year, (*id.*), reflecting consideration of 20 C.F.R. § 404.1527(c)(2)(i). As to the supportability of Dr. Shrestha's opinion, *see* 20 C.F.R. § 404.1527(c)(3), the ALJ observed that the MRI and EEG administered by Dr. Shrestha found only a mild, stable abnormality. (Doc. # 9-2 at 37.) The ALJ also cited evidence that was inconsistent with Dr. Shrestha's opinion, as the Court just described, suggesting that she considered consistency. (*Id.*); *see* 20 C.F.R. § 404.1527(c)(4). The ALJ made note of Dr. Shrestha's specialization in neurology. (Doc. # 9-2 at 37); *see* 20 C.F.R. § 404.1527(c)(5). The Court therefore concludes that the ALJ's weighting of Dr. Shrestha's opinion was supported by substantial evidence and that the ALJ's explanation was sufficiently specific.

　　　　　*b.　Dr. Thomas's opinion*

　　Similarly, substantial evidence supported the ALJ's assignment of "minimal weight" to Dr. Thomas's opinion about Mr. Makeen's limitations, and the ALJ's explanation for doing so reflects an application of the factors at 20 C.F.R. § 404.1527(c).

　　First, the ALJ's determination that Dr. Thomas's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques was founded in substantial evidence. *See* 20 C.F.R. § 404.1527(c). Mr. Makeen argues that Dr. Thomas based her opinion on "diagnostic testing of blood sugar levels." (Doc. # 12 at

13.)  While that very may well have supported Dr. Thomas's diagnosis of Type II

diabetes in Mr. Makeen, *see* (Doc. # 9-8 at 353), the Court fails to under how a blood

sugar assessment could possibly support Dr. Thomas's opinion that Mr. Makeen could

only perform a job in a seated position and while standing and/or walking for one hour

each weekday, *see* (*id*. at 354).  Mr. Makeen does not cite any other "medically

acceptable clinical and laboratory diagnostic techniques" supportive of Dr. Thomas's

extreme opinion of his physical limitations, *see* (Doc. ## 12, 14), nor did this Court find

any in the Administrative Record.  The Court therefore affirms the ALJ's decision that

Dr. Thomas's opinion was not entitled to controlling weight.

Second, the ALJ's assignment of "minimal weight" to Dr. Thomas's opinion was

based on substantial evidence, and the ALJ adequately explained why such a weighting

was warranted.  As the Court just noted, the ALJ explicitly acknowledged the

presumption that a treating source's opinion is entitled to deference, *see* 20 C.F.R.

§ 404.1527(c)(2), and she noted that Dr. Thomas was Mr. Makeen's treating primary

care physician.  (Doc. # 9-2 at 37.)  With regard to the supportability of Dr. Thomas's

opinion, *see* 20 C.F.R. § 404.1527(c)(3), the ALJ stated that Dr. Thomas's opinion was

"not supported in the medical evidence and record, and [was] based on claimant

reports."  (Doc. # 9-2 at 37.)  The Court agrees for the reason it explained in the

previous paragraph, and Mr. Makeen fails to cite any other "relevant evidence, . . .

particularly medical signs and laboratory findings," 20 C.F.R. § 404.1527(c)(3),

supportive of Dr. Thomas's opinion about his physical limitations.[9] *See* (Doc. ## 12, 14.) That the ALJ did not specifically address the consistency of Dr. Thomas's opinion with the record as a whole or Dr. Thomas's specialization, *see* 20 C.F.R. § 404.1527(c)(4), (5), does not amount to error, as an ALJ "need not explicitly discuss each factor." *Jones v. Colvin*, 610 F. App'x 755, 758 (10th Cir. 2015).

For these reasons, the Court affirms the ALJ's assignment of "minimal weight" to Dr. Thomas's opinion as supported by substantial evidence and made in accordance with applicable legal rules.

### c.    The ALJ's RFC finding

Mr. Makeen tacks a brief, additional argument to his criticism of the ALJ's weighting of his treating physicians' opinions—that the ALJ failed to identify specific medical evidence supporting the physical limitations she found in assessing Mr. Makeen's RFC, such as a maximum lifting load of forty pounds. (Doc. # 12 at 15–16.) Mr. Makeen cites the requirement of SSR 96-8p that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." (*Id.*) (quoting SSR 96-8p.)

The record flatly contradicts Mr. Makeen's argument. The ALJ discussed at length the treating physicians' opinions discussed above, in addition to Mr. Makeen's

---

[9] For example, Mr. Makeen's citation to an examination by Dr. Stephen Johnson, M.D., on March 7, 2016, *see* (Doc. # 12 at 13–14), is a mischaracterization of the record, as Dr. Johnson actually observed that Mr. Makeen walked "reasonably well" and "[i]n the sitting position, there is good strength with hip flexion." (Doc. # 9-16 at 1047.) None of Dr. Johnson's findings could be read to support Dr. Thomas's opinion about Mr. Makeen's inability to sit, stand, and walk, and his need to nap at least three times a day.

symptoms, medical evidence of his physical and mental impairments, and other opinion

evidence in explaining how she arrived at Mr. Makeen's RFC. *See* (Doc. # 9-2 at 32–

39.) With the regard to the physical limitations in the RFC, which Mr. Makeen argues

are unsupported and unexplained, the ALJ specifically discussed medical evidence

supportive of those limitations. For example:

> An MRI of his lumbar spine in early 2106 [sic] showed transitional L5 level with partial sacralization, and small right facet joint synovial cyst at L4-L5 resulting in severe right lateral recess narrowing that appeared to compress and distort the transversing right L5 nerve root. Thus, in May of 2016, he underwent a successful semi-hemilaminectomy L4-5 right with excision of synovial cyst. Post-operative x-rays demonstrated evidence of previous partial laminectomy with no evidence of instability. His physician stated, "I am pleased with his progress . . . **I suggested he try to avoid heavy lifting, preferably with a weight limit of 40 pounds or so**."

 (*Id.* at 35) (emphasis added) (internal citations to the Administrative Record omitted).

The ALJ was citing to a "follow-up evaluation" by Dr. Johnson conducted six weeks after

Mr. Makeen's surgery. *See* (Doc. # 9-16 at 1039.) The Court is satisfied that the ALJ's

narrative explanation of her RFC finding sufficiently described how evidence supported

her conclusion, citing specific medical facts and nonmedical evidence.

**B.      THE ALJ'S TREATMENT OF MR. MAKEEN'S TESTIMONY**

In explaining how she arrived at Mr. Makeen's RFC, the ALJ assessed Mr.

Makeen's symptoms under SSR 16-3p. (Doc. # 9-2 at 33–34.) She wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, **the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent** with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.* at 34) (emphasis added).

    1.   <u>Legal Principles</u>

Symptoms are a claimant's own description or statement of his physical or mental impairments.  20 C.F.R. § 404.1502(i); SSR 96-8p.  At the time Mr. Makeen filed his claim for disability benefits in 2014, Social Security Ruling ("SSR") 96-7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," governed the Commissioner's analysis of a claimant's subjective complaints.  On March 28, 2016, however, Social Security Ruling 16-3p expressly superseded Ruling 96-7p.  Ruling 16-3p eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms.  *Wagner v. Berryhill*, No. CIV-16-154, 2017 WL 3981147, *7 (W.D. Okla. Sept. 11, 2017).  In 2017, the Social Security Administration clarified that it would apply Ruling 16-3p "when [its adjudicators] make determinations and **decisions on or after March 28, 2016**."  SSR 16-3p, 2017 WL 5180304, *13 n.27 (Oct. 25, 2017) (emphasis added).  In the instant action, the ALJ issued her decision on December 27, 2016, nine months **after** Ruling 16-3p superseded Ruling 96-7p.  *See* (Doc. # 9-2 at 41.)  Ruling 16-3p therefore governed the ALJ's analysis of Plaintiff's subjective complaints.  *See Wagner*, 2017 WL 3981147, *7 (stating that the ALJ's credibility evaluation was governed by the ruling in place at the time of his decision); *Nunes v. Berryhill*, No. 16-CV-11499, 2017 WL 4169748, *2 (D. Mass. Sept. 20, 2017) (same).

Ruling 16-3p articulates a two-step process for evaluating a claimant's symptoms.  SSR 16-3p; *see also* 20 C.F.R. § 404.1529.  First, the ALJ determines

"whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* The ALJ "will not find an individual disabled based on alleged symptoms alone." *Id.*

Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* In evaluating the intensity and persistence of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence." *Id.* The ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are **consistent** with the medical signs and laboratory findings of record."[10] *Id.* (emphasis added). As part of that analysis, the ALJ assesses: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain and other symptoms; (5) other treatment the claimant receives or has received for relief from pain and other symptoms; (6) "any measures" the claimant uses

---

[10] The Social Security Administration's regulations also require such a comparison:

> [W]e will evaluate your statements in relation to the objective medical evidence and other evidence. . . . We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4) (emphasis added).

or has used to relieve pain and other symptoms; (7) "other factors" concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c)(3); *Welton v. Berryhill*, No. 17-cv-01193, 2018 WL 1940591, *6 (D. Colo. April 25, 2018).

      2.   <u>Application</u>

Mr. Makeen argues that the ALJ "failed to provide good reasons for discounting [his] statements" concerning the intensity, persistence, and limiting effects of his symptoms. (Doc. # 12 at 17.) He states that "the record contradicts the ALJ's conclusion that [he] does not have ongoing issues with seizure-like spells," citing his own "uncontradicted testimony that he takes 3-4 naps a day after episodes of auras or loss of consciousness." (*Id.*) (citing Doc. # 9-2 at 59.)

The Court observes at the outset that Mr. Makeen's statement of the applicable rules, *see* (*id.* at 16), is, at best, outdated. Mr. Makeen cites to cases from the Tenth Circuit that predate the Social Security Administration's promulgation of SSR 16-3p and 20 C.F.R. § 404.1529, and these older cases do not articulate the rules in place at the time the ALJ issued her decision in this case. *See* (Doc. # 12 at 16) (citing, *e.g.*, *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004); *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987)). In light of the Social Security Administration's promulgation of SSR 16-3p and accompanying regulations, the Court disregards Mr. Makeen's statement of the applicable rules and looks instead to authority issued on or after the promulgation of SSR 16-3p.

The merits of Mr. Makeen's arguments are no more convincing. The ALJ's conclusion that Mr. Makeen's statements concerning his symptoms were "not entirely consistent with the medical evidence and other evidence in the record" was supported by substantial evidence, which the ALJ adequately explained elsewhere in the decision. *See* (Doc. # 9-2 at 34.) Using the example Mr. Makeen proffers—the ALJ's assessment of his activities of daily living, *see* (Doc. # 12 at 17–18); *see also* 20 C.F.R. § 404.1529(c)(3)(i), Mr. Makeen's argument that the ALJ "failed to explain" how his activities of daily living contradict his allegations is completely disproven by the text of the ALJ's decision:

> Although the claimant alleges his medical conditions result in substantial restrictions upon his daily living, he admitted that he is able to attend to his personal care needs, watch TV and movies, listen to music, perform "light" (house) cleaning duties, prepare and cook simple meals, mow the grass, and drive a car (when he feels "able"). Further, the claimant is able to attend doctor's appointments, go shopping in stores, goes to the gym, attend church services, and visit with friends and family members daily. He is able to care for his pets, including training them and giving them food.

(Doc. # 9-2 at 31.) The ALJ cited Mr. Makeen's own responses on a "Function Report" for the Administration, *see* (Doc. # 9-6 at 211–18), and his testimony before her, *see* (Doc. # 9-2 at 69–71). (Doc. # 9-2 at 31.) In combination with the ALJ's thorough analysis of opinion evidence and the medical record, the Court is satisfied that the ALJ did not "fail[] to properly evaluate Mr. Makeen's testimony" and his other statements about his symptoms and that her decision was supported by substantial analysis. *See* (Doc. # 12 at 16); *see also Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, *9 (W.D. Okla. Sept. 11, 2017) ("While 'sporadic performance' of activities, like

performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity, . . . the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations").

## C. THE ALJ'S HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT

The ALJ presented the vocational expert with the following hypothetical:

> Please assume a person who is 51 at onset, has at least or hast [sic] an associate's degree in applied science and the work history as [the vocational expert had] described. Further assume that this individual is capable of performing work at the medium range of exertion. This person can maximum – at a maximum lift 40 pounds, can lift up to 25 pounds frequently, is unlimited in ability to sit, stand, or walk, must avoid unprotected heights, ladders, ropes, scaffolds, and hazardous machinery. This person can understand, remember, and carry out simple, routine, repetitive tasks that can be learned in 30 days or less with occasional interaction with coworkers, supervisors, and the general public. Based on that hypothetical, would this individual be able to perform past work?

(Doc. # 9-2 at 76.) The vocational expert answered that such an individual would not be able to perform Mr. Makeen past work as a network engineer or as a network systems analyst but could perform work as a sandwich maker, as a kitchen helper, or as a laundry worker. (*Id.* at 76–77.) The ALJ also asked follow-up questions regarding additional limitations (*e.g.*, "the individual could not use computer screens as well;" "If the person were to be absent three times a month." (*Id.* at 78.) The ALJ relied on the vocational expert's answers to reach her decision that "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." *See* (Doc. # 9-2 at 40–41.)

1. <u>Legal Principles</u>

The Commissioner may use the services of a vocational expert to determine whether a claimant is able to do his or her past relevant work or work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 404.1566(e). A vocational expert "may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands" of such work. 20 C.F.R. § 404.1560(b)(2); *see Koopman v. Apfel*, 162 F.3d 1173 (10th Cir. 1998) (holding that where the claimant fell between two RFC levels, "the ALJ did exactly what he should have done – he turned to a vocational expert."); SSR 83-12.

"Hypothetical questions must include a full description of the claimant's impairments in order for the testimony elicited by such questions to constitute substantial evidence to support the ALJ's decision." *Folsom v. Barnhart*, 309 F. Supp. 2d 1286, 1298 (D. Kan. 2004) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)). However, the ALJ need not include any alleged limitations which he or she does not accept as true in the hypothetical question. *Id.* (citing *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)). Rather, the ALJ "may restrict [the] hypothetical to those limitations which she has found to exist based upon substantial evidence in the record." *Id.* (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

2. <u>Application</u>

Mr. Makeen asserts that the ALJ's hypothetical question to the vocational expert was flawed because it failed to "account[] for all the mental limitations recognized in the

ALJ's decision." (Doc. # 12 at 19.) It was error, in his view, for the ALJ to "concede[]
that [he] ha[d] moderate difficulties in social functioning and moderate difficulties in
concentration, persistence, or pace" but to "not include any of these limitations . . . in the
accepted hypothetical question to the vocational expert." (*Id.*) Mr. Makeen further
argues that in the Tenth Circuit, a hypothetical question that limits a claimant to simple,
unskilled work does not satisfactorily account for the claimant's limitations in
concentration, persistence, and pace, relying on *Wiederholt v. Barnhart*, 121 F. App'x
833, 839 (10th Cir. 2005). (Doc. # 12 at 19–20.)

Mr. Makeen's argument is unavailing because it confuses the five distinct steps
of the Commissioner's sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).
The ALJ described that Mr. Makeen had "no more than a moderate limitation" in social
functioning and "no more than moderate limitations" in concentration, persistence, and
pace at the second step of the sequential analysis. (Doc. # 9-2 at 31.) At step two, the
burden is on the claimant, but the claimant need only make a *de minimis* showing of
medical severity. *Brant v. Barnhart*, 506 F. Supp. 2d 476, 481 (D. Kan. 2007) (quoting
*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

In contrast, the ALJ's  hypothetical question to the vocational expert, in which the
hypothetical individual could "understand, remember, and carry out simple, routine,
repetitive tasks that can be learned in 30 days or less with occasional interaction with
coworkers, supervisors, and the general public," was based on her finding of Mr.
Makeen's RFC. *See* (Doc. # 9-2 at 32.) The determination of a claimant's RFC is a
prerequisite to the fourth step of the sequential analysis—a determination with

standards completely different from those applied to a finding at step two.  (Doc. # 11-2 at 17–22); *see* 20 C.F.R. § 404.1545; SSR 96-8p.  An ALJ bears the burden of determining a claimant's RFC "based on **all** of the relevant evidence in the case record," and the ALJ must satisfy rigorous narrative discussion requirements, such as explaining "how any material inconsistencies or ambiguities in the case record were considered and resolved."  SSR 96-8p; *Brant*, 506 F. Supp. 2d at 485–86.  The ALJ's burden to establish the claimant's RFC is therefore much higher than the claimant's burden at step two.  Accordingly, a finding that a claimant has a certain limitation step two does not necessitate a finding of a limitation when the ALJ determines the claimant's RFC at step four.  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  The Court therefore rejects Mr. Makeen's argument that the ALJ's hypothetical question to the vocational expert erroneously omitted his mental limitations.

Mr. Makeen's claim rests on his mistaken belief that in the Tenth Circuit, limiting a claimant with mental impairments to low-skilled work does not compensate for the claimant's mental limitations.  *See* (Doc. # 12 at 19–20) (citing *Wiederholt*, 121 F. App'x at 839.)  But no such hard and fast rule exists.  Though the Tenth Circuit has found instances where an ALJ's RFC limitation as to unskilled work failed to adequately incorporate his or her other findings regarding the claimant's mental impairments, *see, e.g.*, *Wiederholt*, 121 F. App'x at 839, *Chapo v. Astrue*, 682 F.3d 1285, 1291 n.3 (10th Cir. 2012), the Tenth Circuit has also held that an ALJ **may** account for a claimant's "moderate concentration, persistence, and pace problems in his [or her] RFC assessment by limiting [the claimant] to unskilled work," *Vigil*, 805 F.3d at 1204.  The

Social Security Administration's rulings and regulations also contradict Mr. Makeen's understanding of any 'rule.' For example, its Program Operations Manual System ("POMS"), DI 25020.010, § B(3), states that "concentration is not critical" to a claimant's ability to perform unskilled work. *See also* SSR 96-9p (describing the mental activities generally required by unskilled work).

Here, the ALJ's RFC assessment and her question to the vocational expert limited Mr. Makeen to "simple, routine, repetitive tasks that can be learned in 30 days or less with occasional interaction with coworkers, supervisors, and the general public." (Doc. # 9-2 at 32, 76.) The evidence regarding Mr. Makeen's mental status supports the ALJ's RFC determination (and question to the vocational expert) that limiting Mr. Makeen to simple, repetitive tasks requiring only occasional interaction would adequately account for his "no more than moderate" limitations in social functioning and in concentration, persistence, and pace. *See* (Doc. # 9-2 at 31.)

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the December 27, 2016, written decision of the administrative law judge is AFFIRMED.

DATED:  July 31, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge